# DISTRICT COURT OF THE UNITED STATES,

# DISTRICT OF VERMONT,

## JUNE, 1842.

---

### IN THE MATTER OF EDSON COMSTOCK.

There is no distinction, under the bankrupt law, between a judgment in an action arising *ex delicto* and a judgment in an action arising *ex contractu ;* they are both debts, within the meaning of the law, and both proveable against the estate of the bankrupt. And the decision of this question is not affected by the fact, that in the action *ex delicto* it is adjudged by the court, and certified upon the execution, that the cause of action arose from the wilful and malicious act or neglect of the party.

A creditor, who does not elect to prove his debt under the proceedings in bankruptcy, has a right to pursue such remedies as are afforded to him by the state law, against the bankrupt, certainly until the bankrupt has obtained his certificate of discharge in bankruptcy; and if he be imprisoned, by virtue of process issuing from the state court, after he have filed his petition and been decreed a bankrupt, it is not competent for the district court of the United States to order his discharge from such imprisonment, previous to his obtaining his certificate of discharge as a bankrupt.

Whether, after the bankrupt has obtained his certificate of discharge, the district court can order him discharged from such imprisonment, or whether he must proceed by *audita querela*, or otherwise, in the state court, *quære.**

THE petitioner applied to be discharged from imprisonment on an execution issued on a judgment rendered against him by the supreme court of Vermont. He alleged, that on the thirtieth of March, 1842, after the recovery of the judgment, he filed his petition, in due

---

* See *Comstock* v. *Grout*, 17 Vt. 512, where the decision of the supreme court of this state, discharging Comstock from imprisonment, upon *audita querela* brought by him after he had obtained his certificate of discharge in bankruptcy, is reported. See, also, the decision of STORY, J., in the *matter of Cheney*, 5 Law Rep. 19, and the decision of SPRAGUE, J., in the *matter of Winthrop*, 5 Law Rep. 24.

In the matter of Comstock.

form, to be declared a bankrupt, and on the twenty fourth of May, 1842, was declared a bankrupt accordingly; that on the fourth of April, 1842, he was arrested and committed to jail on the execution, and was still held in custody. It appeared from a copy of the execution annexed to the petition, that the judgment was rendered in an action founded on tort, the cause of which was adjudged and certified to have accrued from the wilful and malicious act of the petitioner.

*H. Carpenter* for petitioner.

*L. B. Vilas* for creditor.

The opinion of the court was delivered by

PRENTISS, J. The distinction which has been insisted upon in this case, between a judgment rendered in an action on *tort*, and a judgment rendered in an action on *contract*, is wholly unavailable, as against this application. The right of the petitioner to be discharged from imprisonment, if any such right exist, cannot be affected by any consideration of that nature. There is no distinction, under the bankrupt law, between a judgment in an action arising *ex delicto*, and a judgment in an action arising *ex contractu*. They are both *debts* within the meaning of the law, and both proveable against the estate of the bankrupt. In this case, the judgment, though rendered in an action founded on tort, was rendered before the decree of bankruptcy, and was consequently a subsisting debt, which might be proved, like any other subsisting debt, under the bankruptcy, and like any such debt, whether proved or not, will be barred by the bankrupt's certificate of discharge.

It is true, that by the law of this state, when a party is committed to jail on an execution issued upon a judgment rendered in an action founded on tort, and it is adjudged by the court and certified upon the execution, that the cause of action arose from the wilful and malicious act or neglect of the party, he can be admitted neither to the liberties of the prison, nor to the benefit of the poor debtor's oath. This law has existed many years in the state, and has had, as has been justly said by counsel, a very beneficial tendency. It has, no doubt, proved a salutary restraint against the commission of

malicious and mischievous trespasses. The imprisonment, to which it subjects evil disposed persons, destitute of the means of making compensation in damages, or concealing and withholding their means to do so, operates as a punishment upon them, and is a great security against injuries to property, and other injuries of a personal nature, which do not amount to public offences, and cannot be treated and punished as such. I have always regarded the law as a very judicious one, and as not at all oppressive, since power is vested in the courts, after an imprisonment suited to the aggravation of the case, on application made for the purpose, to remove the disability and allow the party the privilege of the poor debtor's oath. It may be, as has been urged, that the efficiency of this law will be much impaired, and its benefits in a measure lost to the community, if it is held to be in the power of any party, after judgment against him for a malicious tort, to discharge himself from the judgment by availing himself of the benefit of the bankrupt law. This, if true, might be a very proper argument to address to the national legislature, who have full power over the bankrupt law, but can have no weight with a judicial tribunal, whose business it is to say, not what the law ought to be, but what it is.

Considering, then, a judgment recovered in an action on tort, as to the purposes of the bankrupt act, as not distinguishable from a judgment recovered in an action on contract, but both alike proveable under the act, the main questions are, whether the petitioner, upon the facts appearing in the case, is entitled to be discharged from custody, and whether it is competent for this court to order his discharge.

The right of the petitioner to be discharged rests upon a general right of exemption, claimed and assumed to accrue immediately upon the decree of bankruptcy, from arrest and imprisonment for all debts proveable under the bankruptcy. It is certain, that no such right of exemption is expressly given by the bankrupt act, and it appears to me to be equally plain, that none is impliedly given. The provisions of the act, instead of implying, seem clearly to negative, any such right, as against a creditor, like the one in the present case, who does not choose to come in and prove his debt.

The act declares, " that no creditor, or other person, *coming in and proving his debt, or other claim,* shall be allowed to maintain

In the matter of Comstock.

any suit at law or in equity therefor, but shall be deemed thereby to have waived all right of action and suit against such bankrupt; and all proceedings already commenced, and all unsatisfied judgments already obtained thereon, shall be deemed to be surrendered thereby."

This provision evidently implies an option on the part of any creditor either to come in and prove his debt under the bankruptcy, or to pursue his remedy against the bankrupt at law. It clearly supposes a right in the creditor to take either course; for instead of taking away the remedy at law as to all creditors, who have the *right* to come in and prove their debts, it takes it away only as to such creditors who *actually* come in and prove their debts. By the terms of the provision, proof under the bankruptcy is a waiver and relinquishment of all right of action or execution against the bankrupt, and no suit or proceeding whatever can be had against him, either at law or in equity. The proof itself operates as a discontinuance of any suit pending, and is a surrender of any judgment recovered for the debt proved; and if the bankrupt is in custody, either on *mesne* process or execution, he will of course be entitled to be immediately discharged from such custody.

The act, like the English bankrupt law, allows the creditor to elect, whether he will come in and prove his debt, or take his remedy at law. This right of election is an established doctrine of the courts of equity in England, and has been invariably recognized and acted upon by them. They hold, that where a creditor comes in under the commission of bankruptcy and proves his debt, it is an election to take his remedy for the debt under the commission; and they will not allow him to imprison the bankrupt for not paying the debt, and if the bankrupt is imprisoned, they will discharge him out of custody. On the other hand, where a creditor elects to proceed at law, they will not allow him to prove his debt under the commission. Thus, if a creditor, after the issuing of the commission, take the bankrupt in execution, apprised of the disposition of the effects, and knowing that there may be a certificate, he is deemed to have made his election, and will not be allowed to prove his debt, or if he proves it, the court will order the debt to be set aside and disallowed. The principle is, that the creditor may elect either to

proceed at law, taking his chance of being ultimately defeated by a certificate, or come in and take his remedy under the bankruptcy.

It has been argued, that it would be unreasonable, after the bankrupt has surrendered all his estate, and thereby divested himself of all his means to pay his creditors, that any of them should be at liberty to arrest and hold him in prison.   But it should be remembered, as has been once before observed, that the question is not, what the law ought to be, but what the law is.   It should be remembered, also, that the bankruptcy in most cases, as in this, is the voluntary act of the bankrupt himself, without the concurrence and perhaps against the will of his creditors ; and that whether he has acted fairly and surrendered all his property is a question, which the creditors, in reason and justice, have a right to make, and which the act allows them to make.   The decree of bankruptcy decides nothing in regard to this question.   It divests, to be sure, the bankrupt of his estate, and the creditors who prove their debts, and thereby waive all other remedy, will have the benefit, to the exclusion of all others, of so much, at least, as he discloses and surrenders ; but he may, notwithstanding, never entitle himself to a certificate of discharge, and may never obtain one.

The act provides, that if the bankrupt shall be guilty of any fraud or wilful concealment of his property or rights of property, or shall have preferred any of his creditors contrary to the provisions of the act, or shall wilfully refuse or omit to comply with any orders or directions of the court, or shall admit a false or fictitious debt against his estate, or shall, after the passing of the act, have applied trust funds to his own use, or, being a merchant, banker, factor, broker, underwriter, or marine insurer, shall not have kept proper books of account, he shall not be entitled to any discharge or certificate.   Any one of these things will prevent his obtaining a certificate ; and who can say, in advance, that a certificate will not be refused him ?   How, then, can any creditors, except such as elect to come in under the bankruptcy, and thereby preclude themselves, under the positive provision of the act, from any other remedy, be prevented from pursuing, in the mean time, their ordinary remedy at law ?

But when a certificate is obtained, it is not absolutely conclusive in favor of the bankrupt.   The act declares, that the certificate,

In the matter of Comstock.

when duly granted, shall, in all courts of justice, be deemed a full and complete discharge of all debts, contracts, and other engage-. ments of the bankrupt, which are *proveable* under the act, and shall and may be pleaded as a full and complete bar to all suits brought in any court of judicature whatever; and the same shall be conclusive evidence of itself in favor of the bankrupt, *unless the same shall be impeached for some fraud or wilful concealment by him of his property, or rights of property,* contrary to the provisions of the act. The certificate may be impeached, and its effect wholly avoided, by proof of fraud or wilful concealment of property by the bankrupt; and how can any court say, beforehand, that such proof will not be produced by the creditor, whenever the certificate is set up against him?

If the certificate only, and nothing short of it, will bar the remedy at law of a creditor, who does not come in and prove his debt, and even that may be impeached and avoided, it would seem to be very clear, that his right to proceed at law remains unimpaired and unaffected, until the validity of the certificate is tried and decided against him. This right to proceed against the bankrupt by original writ or execution must carry along with it all the incidents legitimately belonging to such process, and if by the state laws the person of the bankrupt may be arrested and imprisoned by virtue of such process, on what ground can any court interpose in his behalf, before a certificate is granted, and discharge him out of custody either on *mesne* or final process? Except as against the property belonging to the bankrupt at the time of the decree of bankruptcy, which by force of the decree alone, and without any reference to the event of a certificate being granted or refused, is *ipso facto* transferred from him and vested absolutely in the assignee, so that he has no longer any title to it, the creditor remains in the possession, and may avail himself, of all the rights which the laws of the state give him; and neither this nor any other court, until a certificate of discharge, can release the bankrupt from arrest or imprisonment for a debt which is proveable but not proved, any more than they can release him from arrest or imprisonment for any claim which is not proveable.

After a certificate is granted to the bankrupt, the act provides no mode for his discharge from custody on *mesne* process or execution,

nor does it give any express authority to this or any other court to discharge him. In this particular the act differs not only from the English bankrupt laws, but from the former bankrupt law of this country. By the English laws, if the bankrupt was prosecuted for any debt due before the bankruptcy, he might be discharged on common bail, and plead his certificate; if taken in execution, or detained in prison, on a judgment obtained before the allowance of his certificate, so that he had no opportunity to plead it, any one of the judges of the court, in which the judgment was obtained, might discharge him from custody. Under the former bankrupt law of this country, when the bankrupt was sued and arrested, he might appear and plead without bail, and give his certificate in evidence; when taken in execution, or detained in prison, on a judgment obtained before his certificate was allowed, any one of the judges of the court, in which the judgment was obtained, or any court, judge, or justice, within the district where the bankrupt was detained, having power to award or allow the writ of *habeas corpus*, might order his discharge.

No such provision, nor indeed any provision whatever on the subject, as I have said, is contained in the existing bankrupt act; and whether, after the bankrupt has obtained his certificate, this court can interfere in a summary way in his behalf, and relieve him from imprisonment on the process of a state court, as well against a creditor who has not proved as one who has proved his debt, or whether the bankrupt must proceed by motion, *audita querela*, or bill in equity, as the case may require, in the state courts, it is not necessary, nor do I mean, now, to express any opinion. It may be well to observe, however, that whatever may be necessary to the full and complete exercise of the jurisdiction conferred by the bankrupt act, this court has power to do or order to be done. If, therefore, in any stage of the proceedings in bankruptcy, the personal presence of the bankrupt is necessary before the court, or a commissioner, the court may undoubtedly order him to be brought up for the special purpose for which he is wanted, to be remanded when the special purpose is answered.