# The West Branch Bank and Mehaffy *versus* Armstrong.

*Subrogation between Joint Endorsers of Negotiable Paper—Lien of Bank on Stock of Debtor attaches on Protest of Note.—Lien not extinguished by Sale of Stock on Execution.*

1. The joint endorsers of negotiable paper are liable as copromissors, and as such, have no rights of subrogation against each other.

2. By the Act 20th March 1819, § 35, where bank stock is taken in execution and sold, the purchaser of the stock takes it subject to the lien of any debt due by the holder of the stock to the bank; and a subsequent sale of the stock for the debt creating such lien divests the title of the first purchaser.

3. A note drawn by C. to the order of A. and B., and jointly endorsed by them, having been discounted at a bank where A. held stock, was protested for non-payment, and judgment confessed by A. and C. to the bank for the amount: afterwards D. obtained a judgment against A., upon which C. issued execution, levied upon and bought the stock at the sale. The bank then obtained judgment against A. and B. on their joint endorsement, and issued executions on both of their judgments, upon which A.'s stock was again levied on, when B., one of the endorsers, paid the debt to the bank, took an assignment of the judgments to his use, and on the execution against A. and C. purchased A.'s stock. The bank refusing to transfer the stock to B., he brought suit, when D. interpleaded, claiming it under the sheriff's sale to him.

*Held*, that the payment of the debt by B., with the assignment of the judgments, did not extinguish the lien of the bank on the stock which attached upon the protest of the note: that by virtue of the assignments, B. acquired all the rights of the bank, and became entitled to all its remedies: and that under the second sale he took a good title to the stock, notwithstanding the previous sale to D.

ERROR to the Common Pleas of *Lycoming county*.

This was an action of *assumpsit* brought in the court below, to January Term 1859, by James Armstrong against the West Branch Bank, to recover the value of certain stock of the bank which was claimed by him, and whose demand to have it transferred upon the books of the bank had been refused.

The stock was also claimed by Lindsey Mehaffy, who was allowed to interplead, and thus become a party to the suit.

The material facts of the case are as follows :—

On the 22d of April 1856, William McKinney was the owner of forty shares of stock in the West Branch Bank at Williamsport, and which still stand on the books of the bank without transfer.

On that day, John McKinney made his promissory note, payable at ten days, to the order of William McKinney and James Armstrong, at the West Branch Bank for $1000, which was discounted at the bank, and the proceeds paid to John McKinney. On the 24th of July 1856, this note was duly protested for non-payment.

On the 27th of August 1856, Lindsey Mehaffy obtained judg-

[West Branch Bank *v.* Armstrong.]

ment against William McKinney for $1706.44, on which a *fi. fa.* was issued, September 1st 1856, and "forty shares of West Branch Bank stock," levied on as the property of William McKinney, which, on the 13th of September 1856, was sold to Lindsey Mehaffy for $980. The dividends were not levied on.

On the 28th of August 1856, the West Branch Bank obtained judgment against John McKinney and William McKinney for $1007.03, on which executions were issued, the real estate of William McKinney sold, and the proceeds applied to prior judgments of the bank. On the 16th November 1856, a *fi. fa. de novo* was issued by the bank, and on the same day the stock dividends due thereon, were levied on as the property of William McKinney.

On the 24th of January 1857, Armstrong gave notice to the bank not to transfer the stock but apply it to his debt, and that he was ready to pay on receiving an assignment.

On the 18th of September 1858, the West Branch Bank obtained judgment against William McKinney and James Armstrong on the note which had been endorsed by them for the sum of $1070.37, on which execution was issued, and the stock and dividends of William McKinney levied on.

On the 10th of December 1858, both of said judgments were transferred to the use of James Armstrong, he having paid the bank in full for them, and in pursuance of the said judgments and executions, the stock and dividends due thereon were sold by the sheriff on the 20th of December 1858, as the property of William McKinney, to James Armstrong, for the sum of $40.

The stock and dividends were claimed by Mehaffy, who was a director of the bank, under the above recited proceedings, as a *bonâ fide* purchaser, without notice of any claim on behalf of the bank or of any other person. And by Armstrong, on the ground that the judgments of the bank, on which they were sold to him, were liens on the stock and dividends for a debt due to the bank by McKinney, under the 35th section of the Act of March 20th 1819, before Mehaffy obtained his judgment or became a purchaser; and the question on the trial was, to whom did the stock and dividends belong. On the trial the defendant proposed to ask the president of the bank, whether the bank had authorized suit to be brought against John and William McKinney, to show that Armstrong obtained the judgment and levied on the stock for his own use, and not to preserve the lien which the bank held against the stock, and because the bank looked to other securities than said lien from which she received the money. This was objected to by the plaintiff and rejected by the court, and was the first error assigned.

The plaintiff requested the court to charge the jury:—

1. That the West Branch Bank, by virtue of the Acts of

[West Branch Bank *v.* Armstrong.]

Assembly, had a lien against the stock of William McKinney for his indebtedness as endorser on the note discounted by the bank on the 26th of April 1856, and protested 24th July 1856; from the date of said discount and protest.

2. That the West Branch Bank having obtained judgment in the Common Pleas of Lycoming county, on the 28th of August 1856, against William McKinney and John McKinney, in suit No. 69, in November Term 1856, for $1007.03, had a lien against the stock of William McKinney for that amount from the date of the judgment.

3. The bank having obtained judgment on the note of the 26th of April 1856, against William McKinney and James Armstrong as endorsers (No. 35 August Term 1857,) for the sum of $1070.37, and this, with the judgment in No. 69, November Term 1856, having been paid the bank by the plaintiff, and transferred to his use,—the lien of the bank enured to his benefit, and he having became the purchaser under said judgments of the forty shares of stock and dividends at sheriff's sale for a sum less than William McKinney's share of said judgment, he is entitled to the stock and dividends as purchaser.

4. That the right of plaintiff as purchaser, to the stock and dividends, is not affected or impaired by the alleged sale of the stock to L. Mehaffy on the 13th of September 1856, such sale being subject to the lien of the bank and sale under it.

5. That under the whole evidence the plaintiff is entitled to recover.

The defendant requested the court to charge :—

1. The bank had no lien upon the stock of William McKinney, to pay the accommodation note of John McKinney, endorsed by William McKinney and James Armstrong.

2. That if any lien existed it was discharged by the sheriff's sale and purchase by Mehaffy, and the remedy was exclusively upon the fund produced by that sale.

3. Even if the lien continued after the sale, it was discharged when the debt was paid by Judge Armstrong, one of the endorsers, in December 1858.

4. That the sale and purchase of the stock in December 1858, by Judge Armstrong, passed no title to the purchaser. 1st. Because the judgment was no lien upon the stock. 2d. Because the defendant, William McKinney, had no interest therein at the time of the levy.

5. That the only equity which Judge Armstrong has, springs from the fact that he is entitled to contribution for one-half of the amount paid, from his co-endorser, William McKinney. That he stands here as a creditor of William McKinney, and that nothing was due to him until he paid the amount of debt in December

[West Branch Bank v. Armstrong.]

`1858, and that as Lindsey Mehaffy's debt was anterior in time, his equity was superior to that of the subsequent creditor, James Armstrong, and consequently as against Mehaffy, Armstrong cannot claim, that the payment of the debt to the bank did not extinguish the lien on the stock if any such lien was then in existence.

The court below (JORDAN, P. J.,) affirmed the points of the plaintiff, negatived the defendant's first, second and third points, answered the fourth point, by saying that the purchase of the stock by Armstrong, passed the right of the stock to him, although the judgment was not a lien on the stock, that the lien was prior to and was not destroyed by the judgment, and that even if McKinney had no interest in it the bank had a lien upon it.

Defendant's fifth point was answered as follows :—

"Judge Armstrong could only recover from his co-endorser, McKinney, the half of the whole amount he was compelled to pay ; but he does not stand here as a creditor of William McKinney, but as surety to the bank for the debt of John McKinney, and having paid the whole amount, and received a transfer of the judgment, he is entitled to recover, and although Lindsey Mehaffy's debt was anterior in time, it gives him no superior equity over James Armstrong, and the latter having paid the bank, and received a transfer, may claim that the payment did not extinguish the lien, which the bank had in the stock. We are not settling in this case the equity between the co-endorsers."

There was a verdict and judgment in favour of the plaintiff for the value of the stock and dividends, whereupon the defendant sued out this writ and assigned for error here :

1. The rejection of the evidence above mentioned.

2. The answer to plaintiff's fifth point, in which the jury were instructed that under the whole evidence the plaintiff was entitled to recover.

3. In instructing the jury as follows :—

"But Judge Armstrong is in position of a surety to the bank, for John McKinney, having paid the whole amount, and claiming to be placed in the situation of the bank, and such position the court is of opinion he occupies."

"Mr. Mehaffy was a director of the bank, prior to and subsequent to the date of this note of 22d of April 1826. When the note of a stockholder is discounted by the directors, they know that his stock is liable."

"The amount plaintiff is entitled to recover, that is, the value of the stock on the 10th of December 1858, when the plaintiff demanded a transfer of it. The stock then sold, as stated by Mr. Watson, the president, at $26 or $27 per share. The divi-

[West Branch Bank *v.* Armstrong.]

dend up to the time the suit was brought was $190. The value of the stock and the dividend amounting to $190, are the amounts plaintiff is entitled to recover."

*G. W. Youngman*, with whom was *John C. Knox*, for plaintiff in error, argued that the court below erred in their instructions to the jury: because,

1. The bank never claimed any lien upon the stock of the co-endorser, William McKinney, to pay the accommodation note of John McKinney, but, on the contrary, looked solely to the personal security of the endorsers for the payment of the note.

2. Even if the bank had the legal right to seize the stock of one of the endorsers to pay the note, she was not bound to do so, but had the unquestioned right to recover the money due, by suit against the endorsers.

3. If the lien ever attached to the stock, it was discharged by the sheriff's sale to Mehaffy, at which sale no notice was given of any claim on the part of the bank, nor, in fact, had any such claim ever been made.

4. If the lien ever existed, and was not discharged by the sheriff's sale in September 1856, it ceased when the debt was paid by one of the two joint endorsers in December 1858. For after this time no debt was due and unpaid to the bank by the former owner of the stock, and equity would not keep alive the lien in favour of his co-endorser who paid the money, as against Mehaffy, whose equities as creditor were anterior, and therefore superior to those of Judge Armstrong.

*William H. Armstrong*, for defendant in error, contended that the lien of the bank on this stock, commenced from the date, or at farthest from the protest of McKinney's note, and that the 35th section of the Act of March 20th 1819, was not repealed by the Act June 16th 1836, relating to executions: Lex *v.* Potter, 4 Harris 295; while it was affirmed by Act of June 16th 1850, sec. 34, Purd. 74; citing also, Rogers *v.* The Huntingdon Bank, 12 S. & R. 77; Grant *v.* Mechanics' Bank, 15 S. & R. 148; Sewall *v.* The Lancaster Bank, 17 S. & R. 285; Westmoreland Bank *v.* Kuhns, 2 Watts 136. That this lien results for the benefit of an endorser who has been compelled to pay the bank: Farmers' Bank *v.* Gibson, 6 Barr 51; Mech. Bank *v.* Earp, 2 Wh. 390; Willard's Eq. 110; Waln's Assignee *v.* Bank of North America, 8 S. & R. 73. And that after protest, William McKinney and James Armstrong were both debtors of the bank, who had a lien on the stock and dividends until paid.

That a surety or endorser paying for his principal, may have the judgment assigned in order to levy on the lands of the prin-

[West Branch Bank *v.* Armstrong.]

cipal to indemnify himself : Mehaffy *v.* Shaw, 2 P. R. 378; or for contribution : Steckel *v.* Steckel, 4 Casey 233.

The bank did claim a lien on this stock, for she levied on it and refused to assign it. She had a right to resort to it and did so. The lien was fixed by law; the sale to Mehaffy was subject to the lien and did not divest it, nor did it cease when the debt was paid by one of the joint endorsers, for the reasons given in 6 Barr 74.

The opinion of the court was delivered, October 31st, 1861, by

THOMPSON, J.—The plaintiff's rights in this case depended not upon the doctrine of subrogation, for it did not exist as between him and his joint endorser, William McKinney. Joint promisees have no such rights as against each other, and therefore all that was said on that subject was outside of the case.

William McKinney, the proprietor of the stock in question, and the plaintiff, being joint endorsers for John McKinney, became debtors to the bank, certainly on the 24th day of July 1856, the date of the protest of the note of the 22d of April preceding. From that time thenceforth until final satisfaction, they were debtors to the bank, and the stock standing in the name of either, by operation of law, became pledged for the liquidation of the debt: Act of 20th March 1819, § 35, Purd. 334. This statute provided for the levy and sale of the bank stock of any debtor by his creditor, "*subject nevertheless to any debt due by the holder of such stock to the company or body corporate.*"

This provision is not repealed by the Act of the 16th June 1836, relating to executions: Lee *v.* Porter, 4 Harris 412, nor touched by the 34th section of the Act of 16th June 1850.

Mehaffy's debt accrued, and his seizure and sale of the stock took place subsequently to the period when the statutory lien of the bank attached, and hence the sale did not divest the lien. As a purchaser he was bound to know the law, and that the stock was liable to the bank for any indebtedness of William McKinney to it at the time of his levy, and he took the risk of existing debts to the bank when he bought. By the sale, he acquired a right to the stock, only in case the indebtedness of the proprietor to the bank was otherwise extinguished. Or he could have rendered his title complete by payment of the debt himself. This he did not think it expedient to do. Previously to the date of Mehaffy's judgment, the bank obtained judgment by confession against the maker, John, and the endorser, William McKinney, and subsequently against both endorsers for the amount of the note. Execution on the first of these judgments proving unavailable, on the 16th November 1858, an *alias fi. fa.* was issued; and also at the same time an execution on

[West Branch Bank *v.* Armstrong.]

the judgment against William McKinney and the plaintiff. Both judgments were for the debt created by the note. The stock was seized on both executions and sold on the first, as appears by the sheriff's return. After the seizure and before the sale, the bank assigned the judgments to Mr. Armstrong. These transfers carried with them any rights of the bank under the judgments and executions, and unless the receipt of the debt from Armstrong, one of the defendants, must be taken as a satisfaction of them, he has all the rights of the bank, and entitled to all its remedies, by virtue of the assignments: Foster *v.* Fox, 4 W. & S. 92.

The bank chose to transfer the judgments, on terms satisfactory to itself, to Armstrong, and neither party intended the extinguishment of the debt, as against the defendants in the judgment. I know of no principle of law which will hold the judgments to be satisfied against the intention and contract of the parties. The defendants do not object to it, and Mehaffy is placed in no different position by it, from that in which he would have stood, had the bank proceeded in the execution for its own use, instead of the use of Armstrong. By the course adopted the latter secured to himself at least partial contribution from a joint promissor. With the equities between them Mehaffy has nothing to do. The bank never relinquished its hold on the stock, which, we have seen, was good against Mehaffy, and Armstrong, standing in her shoes, has her rights. We think, therefore, that the right to the stock passed by the sale to plaintiff, and that

The judgment must be affirmed.