L. F. JEWELL, Appellee, v. WILLIAM C. NUHN et al., Appellants.

**BUILDING AND LOAN ASSOCIATIONS:** Lien of Corporation—
1  **Stock of Defaulting Officer—Pledgee—Priority.** A stockholder of a building and loan association, receiving, as collateral security to a loan, an assignment of the stock of a fellow stockholder, who was then, but without the knowledge of either the pledgee or the corporation, an embezzler of the funds of the corporation, takes such stock subject to a lien in favor of the corporation to the amount of the embezzlement existing at the date of the loan, the pledgee having constructive notice, at least, of the articles of incorporation reserving such lien.

PRINCIPLE APPLIED: Plaintiff was a stockholder in a building and loan association. The secretary of the association was also a stockholder, holding stock of the value of $2,000 when matured. Plaintiff loaned money to the secretary, and, as collateral security, took an assignment of the certificate representing the secretary's stock. The articles of incorporation provided: "This association shall have a lien on the shares of each shareholder for any sum due it from said shareholder . . . or for any other indebtedness due from the shareholder. No stock shall be transferred unless all debts due the association are first paid." This provision appeared in the *certificate* of stock. Unknown to the plaintiff or to the corporation, the secretary, at the time of the loan, was an embezzler of the funds of the corporation to the amount of $4,000, a fact not discovered until after the death of the secretary a year or so later. After the death of the secretary, plaintiff gave the corporation notice. (Sec. 1626, Code, 1897) that he held the stock as collateral. *Held*, the lien in favor of the corporation had priority over the lien of pledgee.

**BUILDING AND LOAN ASSOCIATIONS:** Articles of Incorpora-
2  tion—Lien on Shares—"Debt"—Construction. Where the law is in conflict on whether the word "debt" may not have a broader meaning than a sum of money due under certain and express agreement, one who loans upon stocks, with knowledge that the same are, under the articles of incorporation, liable for the debts of the stockholders of the corporation, buys at the peril of having the

word "debt", thus used, construed to cover a liability of the stockholder for embezzling the money of the corporation.

PRINCIPLE APPLIED:  See No. 1.

BUILDING AND LOAN ASSOCIATIONS:  Articles of Incorporation
3  —Lien on Shares—"Debt"—Construction.  The word "debt", within the meaning of articles of incorporation providing that the corporation shall have a lien on the stock of its stockholder for any "debt" due the corporation, may be construed to be synonymous with "claim"; and in that sense, the word embraces a cause of action for trover, and is broad enough to cover civil liability for embezzlement.

PRINCIPLE APPLIED:  See No. 1.

BUILDING AND LOAN ASSOCIATIONS:  Articles of Incorporation
4  —Stockholder held to Knowledge.  Where a pledgee of stock of a building and loan association was himself a stockholder of the association, the articles of incorporation were notice to him of a lien created on the stock by such articles in favor of the corporation.

PRINCIPLE APPLIED:  See No. 1.

BUILDING AND LOAN ASSOCIATIONS:  Articles of Incorporation
5  —Lien on Shares—"Debt"—Construction.  One who lends money to a stockholder of a corporation and takes the stockholder's stock as collateral, with notice that the articles of incorporation reserve a lien on the stock of the stockholders in favor of the corporation for any "debt" due from the stockholder to the corporation, should, in construing the word "debt", take into consideration the fact that he is a volunteer, and that the article was framed by the corporation, and therefore intended to be as plenary as possible in protecting its interests.

PRINCIPLE APPLIED:  See No. 1.

LIENS:  Priorities—Enforcement Delay—Effect.  The general rule
6  that the liability for a wrong done will not become a debt until fixed by judgment is not controlling in the case at bar, because this is a contest for priority between lienholders, and the senior lien may not be defeated and made subsequent merely because the debt due its holder has not yet ripened into a liquidated demand.
   PRINCIPLE APPLIED:  See No. 1.

LIENS:  Priorities—Corporate Stock—Corporate Lien for "Debt"—
7  Construction.  Even though the claim of a corporation for a lien on the stock of its stockholder was not a "debt", within the meaning of the articles of incorporation, until reduced to judgment, this did not affect the priority of its lien, but merely postponed its enforcement until the demand was reduced to judgment,

as the articles created a lien for future as well as present indebtedness.

ACTIONS: Nature and Form—Waiving Tort. Whenever a party has derived a pecuniary advantage for a wrong done by him, the person wronged can waive the tort and maintain an action on the contract.

CORPORATIONS: Transfer of Shares—Transfers as Collateral—Notice—Prior Lien of Corporation. The provision of Sec. 1626, Code, 1897, that a transfer of stock is not valid, except as between the parties thereto, until regularly entered upon the books of the company, and that, on transfer for collateral security, the transferee may in writing notify the corporation, and that, from the time of such notice until written notice that the stock is no longer held as collateral, it shall in law be considered as transferred on the books of the corporation, does not extinguish the lien of the corporation (provided for in the articles) for indebtedness existing when the transfer is made, nor enable the pledgee to have priority over the corporation for what the shareholder owes at the time of the pledge.

CORPORATIONS: Articles of Incorporation—Provision for Lien on Stock—Construction—Ejusdem Generis. The rule "*ejusdem generis*" involves the idea that the particular governs the general. It is a mere auxiliary and subordinate formula, intended to assist in the application of the basic rule *that the intent of the parties governs*. Necessarily, there can be no inflexible rule by which parties are arbitrarily held to forego a *general* requirement merely because they also state a *particular* one. *Held*, a general clause was not *ejusdem generis*.

PRINCIPLE APPLIED: The secretary of a corporation was also a stockholder of the corporation. *As secretary*, he owed the corporation on an embezzlement. *As stockholder*, he owed the corporation nothing. He had pledged his stock as collateral to a loan. The pledgee claimed thereunder. The corporation claimed under the following article of the incorporation (the figures being ours): "This association shall have a lien on the shares of each stockholder for any sum due from said stockholder, (1) either on account of the subscription to its stocks, or (2) for money loaned by the association to said shareholder, or (3) for any other indebtedness due from the shareholder. (4) No stock shall be transferred unless all debts due the association are first paid." *Held*, if clause 3 be conceded, *arguendo*, to be *ejusdem generis*, clause 4 could not possibly be so conceded, as it manifestly entered a *new* field of contract, distinct from the particular enumeration— that the term "stockholder" simply defined the *class* who agree to the lien.

**CORPORATIONS: Lien of Corporation—Bonding Officers Against**
11 **Misconduct—Estoppel.** The fact that a corporation exacted a fidelity bond from its officer does not, in the absence of a showing that the bond was *exclusively* relied upon, estop the corporation from asserting, under its articles of incorporation, a lien on the stockholdings of such officer, to cover a subsequent embezzlement.

**CORPORATIONS: Lien of Corporation—Articles—Construction.** A
12 provision of articles of incorporation creating a lien on account of subscription money, or money lent by the corporation to the shareholder, or any other indebtedness due from the shareholder, and providing that no stock shall be transferred unless all debts due are first paid, covers an embezzlement by a shareholder while secretary of the corporation. It is the fact that an indebtedness is due from a member of a class which is made subject to a lien, and not the capacity in which he became indebted, which controls.

PRINCIPLE APPLIED: See No. 1.

**CORPORATIONS: Lien of Corporation—Estoppel.** A building and
13 loan association, which delivered to a stockholder a passbook purporting to contain a copy of the articles of incorporation and the by-laws, but not including therein a provision in the articles giving the association a lien on the shares of stock for the shareholders' indebtedness to it, was not thereby estopped from asserting such lien on the shares of another stockholder which were pledged to the stockholder in question as collateral security, as he had power, by going to the record, to find out what the articles were, and was charged with notice of the articles on record in the office of the proper recorder of deeds, especially where the certificate of stock assigned to him as collateral contained the provision of the articles respecting such lien.

**ESTOPPEL: Equitable Estoppel—Elements—Certainty.** That a
14 stockholder in a building and loan association, with whom another stockholder pledged his stock as collateral security, was sent statements showing that the books of the association had been audited, and that, from an examination of the books and accounts of the secretary and treasurer, the person making the audit found nothing to indicate a lack of faithful performance of duty on the part of such officers, did not estop the association from asserting a lien, under its articles, on the pledged stock for an amount embezzled by the pledgor while secretary of the association, since the persons making the audit and mailing the statements to the pledgee were his agents, as well as the agents of his fellow stockholders.

**PRINCIPAL AND AGENT: Liability of Principal—Joint Agency.**
15 A principal may not recover of his co-principal for and on account of the wrong of their joint agent.

*Appeal from Black Hawk District Court.*—FRANKLIN C. PLATT, Judge.

THURSDAY, DECEMBER 16, 1915.

FOR many years, Boehmler, a shareholder, was the secretary of the defendant association, and had unlawfully appropriated and converted to his own use its moneys, paid in by its members. The 20 shares owned by him were of par value of $100 a share, when fully matured. While owning these, Boehmler, in July, 1905, borrowed of the plaintiff $2,000, giving his promissory note therefor, and pledging as collateral security for the payment thereof his certificate representing said shares. The misappropriations by Boehmler amounted to over $4,000, at the time he made this loan, and he continued them until his death, in 1907, at which time he was indebted to the association on that account to the extent of nearly $8,000. At the time of his death, all dues and assessments necessary to mature the 20 shares of stock, and make them of the paid-up value of $2,000, had been paid in except $40, which, after Boehmler's death, the plaintiff tendered to the defendant association. Before this action was commenced, and before any effort had been made by the association to assert its alleged lien, defendant notified it of his assignment, and requested transfer on the books of the association. This was refused, on the ground that it had been discovered after the death of Boehmler that he was indebted to the association in a sum greater than the value of the shares, on account of misappropriation of its funds. The $2,000 loan made by appellee is unpaid. The trial court ruled that the association had no lien for a defalcation by an officer.—*Reversed.*

*William H. Merner* and *Mullan & Pickett,* for appellant.

*Alfred Grundy* and *H. B. Boies,* for appellee.

SALINGER, J.—I. The paragraph of the defendant's arti-

1. BUILDING AND LOAN ASSOCIATIONS: lien of corporation: stock of defaulting officer: pledgee: priority.

cles of incorporation under which it now claims a lien on the shares of stock for Boehmler's indebtedness to it for moneys misappropriated, is as follows:

"Art. XV. LIENS. This association shall have a lien on the shares of each shareholder for any sum due it from said shareholder, either on account of the subscription to its stocks or for money loaned by the association to said shareholder, or for any other indebtedness due from the shareholder. No stock shall be transferred unless all debts due the association are first paid, except that in the sale of property upon which the association has a mortgage, the stock may be transferred to a purchaser, provided that there are no other claims due the association."

Appellee urges that the judgment below is right; because, even if the article applies to anything other than the debt of a shareholder as such, it applies to nothing but debt,

2. BUILDING AND LOAN ASSOCIATIONS: articles of incorporation: lien on shares: "debt": construction.

and one who embezzles does not, on that account, owe a debt; that the words of the article should be strictly construed against the association, and that, so, appellee was advised, when he made the loan to the share-

holder, that there was no lien except for what is, in strictness, a debt, and may not now be made subject to a liability for embezzlement.

If the law on the point is in such state as that the word "debt" in the article means "debt", in strictness, then appellee had the right to treat the language as meaning that, and may now object to a different interpretation. If the law is clearly against the construction insisted on by appellee, he must now suffer an interpretation opposed to his. If the state of the law does not, with decisive force, give one construction preference over the other, it is for us to determine whether appellee has adopted that interpretation which is the reasonable one in the absence of preponderating law.

Appellee is a stockholder in the defendant association, and so was advised of said article. The question, then, is, taking the law as it is, was appellee justified in believing that the language used by the association meant debt in strictness? The books advised both ways. Which advice was the more persuasive or mandatory,—which should a reasonable man have heeded?

### 2.

As a general proposition, the term "debt" is applied to a sum of money due under certain and express agreement. *Detroit Post & Tribune Co. v. Reilly,* (Mich.) 9 N. W. 492; 8 Am. & Eng. Encyc. (2d Ed.), 986; *Hill v. Bowman,* 35 Mich. 191; Bouvier's Law Dict.; 3 Black. Com. 154; *Rodman v. Munson,* 13 Barb., (N. Y.) 63, 77; *Parker v. Savage,* 74 Tenn. 406-408; *Finch v. Armstrong,* 9 So. Dak. 255; *Hotchkiss & Upson Co. v. Union Nat. Bank,* 68 Fed. 76. Still speaking generally, debt "looks to contract relations, express or implied". *White v. Green,* 105 Iowa 176; *Thornburg v. Buck,* (Ind.) 41 N. E. 85, 86; Bac. Abr.; *Watson v. McNairy,* 4 Ky. (1 Bibb.) 356; *Melvin v. State,* (Cal.) 53 Pac. 416, 419; and it is a money demand for which an action of *indebitatus assumpsit* will lie. *Lindsay v. King,* 23 N. C. 403; *Dowling v. Stewart,* 4 Ill. 195; *In re Radway,* (U. S.) 20 Fed. Cas. 154-162. A line of authorities holds that, generally, to constitute a debt, there must be a demand "for a sum certain" (*Baum v. Tomkin,* (Pa.) 1 Atl. 535; *In re Adams,* 67 How. Prac. (N. Y.) 284, 286 (12 Daly (N. Y.) 454, 457); *Rhodes v. O'Farrell,* 2 Nev. 60, 61); and that an uncertain or unliquidated demand, as for damages, is not a debt. *Jackson v. Laverty,* 31 N. J. Eq. (4 Stew.) 554, 558; *Duncan v. Lyon,* 3 Johns. Ch. (N. Y.) 357; *McElhaney v. Crawford,* (Ga.) 22 S. E. 895; *Clark v. Nevada Land & Mining Co.,* 6 Nev. 203, 208; *Lindsay v. King,* 23 N. C. 401, 403; *Dowling v. Stewart,* 4 Ill. (3 Scam.) 193, 195; *Finch's* case, 9 S. D. 255. That a contingent and unliquidated demand is not a debt is affirmed

by: *Wentworth v. Whittemore*, 1 Mass. 471; *May v. Hammond*, (Mass.) 10 N. E. 751; *People of State of California v. Arguello*, 37 Cal. 524; *Commercial Nat. Bank of Peoria v. Taylor*, 19 N. Y.. S. 533, 535; *Town of Wallingford v. Hall*, 45 Conn. 350, 353; *Davenport v. Kleinschmidt*, 6 Mont. 502; Rapalje & L. Dict. To the contrary are: *Berg v. Radcliffe*, 6 Johns. Ch. (N. Y.) 302; *State v. Medbery*, 7 O. St. 535; *City of Springfield v. Edwards*, 84 Ill. 632.

A statute that a guardian may, with leave of court, compound a debt or demand owing to the ward does not include an unliquidated claim for damages for a tort on behalf of the ward, where the question is whether a settlement of such a claim by the guardian, if made in good faith, is binding upon the ward. *Manion v. Ohio Val. R. Co.*, (Ky.) 36 S. W. 530, 531. On the other hand, *Berson v. Ewing*, (Cal.) 23 Pac. 1112, 1114, holds that, in a statute authorizing a partner to act in liquidating, "debt" is synonymous with "claim", and includes a demand for damages arising from a tort. And as to fundamental provisions against imprisonment for debt, except in cases of fraud, it has been held that a judgment *ex delicto* is not a debt. *Moore v. Green*, (N. C.) 21 Am. Rep. 470; *Long v. McLean*, 88 N. C. 3, 4. And so of taxes or unliquidated claims. *Bolden v. Jensen*, 69 Fed. 745, 746. These are, however, not controlling, because the very language of the provision indicated, by excepting fraud, that contractual debt only is contemplated. But even as to imprisonment for debt, there is conflict. *Stroheim v. Deimel*, 77 Fed. 802, 806. As to required statement of debt, the word "debt" is used in strictness, because the purpose of such statements is to advise what credit the corporation is entitled to. The thought is that those who suffer from a tort do not do so from any reliance on the solvency and credit of the corporation, and that, hence, the word as used in such statements does not cover such things as unliquidated claims for a tort. *Cable v. McCune*, 26 Mo. 371; *Cable v. Gaty*, 34 Mo. 573; *Doolittle v. March*, (Neb.) 9 N. W. 54; *Esmond v. Bullard*, 16 Hun. (N.

Y.) 65, 68. And as to municipal corporations, the word
"debt" or "indebtedness", as used in limitations placed on
municipal power, is almost universally given a meaning much
less broad and comprehensive than it bears in general usage.
*Swanson v. City of Ottumwa,* 118 Iowa 170.

For present purposes, it suffices to state merely that
other cases hold that, to constitute a debt, the obligation must
be due or presently payable; others, that the obligation is not
a debt until reduced to judgment.

We do say in *Bailies v. City of Des Moines,* 127 Iowa
124, 126, that "a debt is a sum of money due. by certain and
express agreement, and originates in or is founded upon con-
tracts express or implied"; but that is purely by way of argu-
ment and illustration, the point decided being that the term
"debt", as used in Code Sec. 1311, does not include delin-
quent taxes in the sense that the statute authorizes a taxpayer
to set off against the assessment of his moneys and credits the
unpaid taxes of a previous year as a debt in good faith owing
by him. According to *Webster v. Seymour,* 8 Vt. 135, 139,
"debt", in its more limited sense, is substantially synonymous
with "contract", and in this sense it is more generally used
in statutes relating to the execution of process; wherefore,
the several acts of Congress exempting soldiers from arrest
for any debt or contract do not bestow on a soldier an exemp-
tion from arrest for nonpayment of taxes. *Lane County v.
Oregon,* 74 U. S. 71, 80, citing *Camden v. Allen,* 26 N. J. L. 398,
holds that a tax, in its essential characteristics, is not a debt,
nor in the nature of a debt, but is an impost levied by authority
of government upon its citizens or subjects for the support of
the state,—that it is not founded on contract or agreement, but
operates *in invitum.* And *Hinchman v. Morris,* (W. Va.) 2
S. E. 863, 871, holds that a special tax or assessment is not
an ordinary debt arising out of contract, express or implied,
though partaking somewhat of the nature of a debt, and is not
a debt within the rule that a debt may be assigned. *Lane
County v. Oregon,* 74 U. S. 71 (7 Wall. 71), is that taxes,

whether state or national, are not debts so as to be subject to the legal tender laws then in existence, and that, in an action brought by the United States to enforce the payment of taxes, there cannot be pleaded a set-off growing out of independent claims against the United States. While it has been held in North Carolina that, when a tax is imposed, the taxpayer becomes a debtor, and what he owes is a debt, in one sense of the word, as embracing a kind of just demand, yet the right of a sheriff to collect such taxes after he has settled for them with the proper authorities is not such debt as is subject to attachment. *Davie v. Blackburn,* (N. C:) 23 S. E. 321, 322.

In *United States v. Eggleston,* 25 Fed. Cas. 979, 981, it is held that the word "debts", as used in Rev. St., Sec. 3466 (U. S. Comp. St. 1913, 6372), providing that, whenever the estate of a deceased person in the hands of his administrator is insufficient to pay all the debts due the deceased, the debts due the United States shall be first satisfied, does not include taxes and funeral charges. On the other hand, it has been held that "debt", in an enlarged sense, means a duty to pay on any ground, and in this sense includes a tax; though, in strict technical language, a tax is not a debt. *Gilliam Co. v. Wasco Co.,* (Ore.) 13 Pac. 324. The Supreme Court of the United States decided in *Dollar Savings Bank v. United States,* 86 U. S. (19 Wall.) 227, that an internal revenue tax was a debt, in the sense that it might be collected by an action at law. And *Felker v. Standard Yarn Co.,* (Mass.) 19 N. E. 220, 221, holds that Pub. St., c. 106, Sec. 60, providing that the officers of a corporation who knowingly make a false certificate on the condition of the corporation shall be jointly and severally liable for its debts and contracts, should be construed to include a tax duly assessed against the corporation and presently payable.

### 3.

Also, speaking generally, some authorities give to "debt" a much broader meaning than do those to which we have

adverted. In *Stokes v. Mason*, 10 R. I. 261, "debt" is held

3. BUILDING AND  to be equivalent to "claim" or "demand".
LOAN ASSOCIA-
TIONS: articles  In *City Council of Dawson v. Dawson*
of incorpora-
tion: lien on  *Waterworks Co.*, (Ga.) 32 S. E. 907, 912,
shares: "debt":
construction.  it is said:

"It is apparent that the word, when taken in a broad and comprehensive sense, includes any obligation to pay money, or other thing of value, that one is under to another, and arises the very moment that the obligation is undertaken, and continues until discharged by payment."

In *Gray v. Bennett*, 44 Mass. (3 Metc.) 522, 526, in defining the legal meaning of the term "debt", the court said:

"The word . . . in its popular sense, includes all that is due to a man under any form of obligation or promise."

In *Daniels v. Palmer*, (Minn.) 42 N. W. 855, 857, Collins, Justice, quoting Lord Coke's definition, says:

"Debitum signifieth not only debt for which an action of debt doth lie, but here in this ancient act of parliament, it signifieth generally any duty to be yielded or paid."

*Dunsmoor v. Furstenfeldt*, (Cal.) 26 Pac. 518, 520, speaking for itself and authorities cited in *New Jersey Ins. Co. v. Meeker*, 37 N. J. L. 282, 300, says that, especially as used in statutes, "debt" is any kind of obligation of one man to another. "A debt signifies what one owes. There is always some obligation that it shall be paid."

Webster defines the word "debt" as: "That which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another, or to perform for his benefit; thing owed; obligation; liability." He defines "indebted": (1) brought into debt; being under obligation; held to payment or requital; in debt. (2) Placed under obligation for something received, for which restitution or gratitude is due. And "indebtedness", as " a state of being indebted".

*In re Brouillard,* (R. I.) 40 Atl. 762, declares—defining what constitutes a debt:

"In other words, the word 'debts' should be understood and taken in its popular meaning, which is synonymous with 'claims'. . . . The word 'debt' says Burrill, in his law dictionary, 'is of large import, including not only debts of record or judgment, and debts by specialty, but also obligations arising under simple contract, to a very wide extent, and in its popular sense, includes all that is due to a man under any form of obligation or promise'."

That "debt" has not a fixed or invariable signification is illustrated by the following: Bouvier defines it as "a sum of money due by certain and express agreement". (See also, to the same effect, 2 Jacob Law Dict. 197, 198.) But Bouvier further says that "in an enlarged sense the term denotes any kind of just demand", which latter definition is broad enough to include claims based upon tort as well as contract. *State v. Mace,* 5 Md. 337; *Ex parte Robertson,* (Tex.) 11 S. W. 669, hold that fines and penalties are not debts. *In re Shaner,* (C. C. A.) 39 Fed. 869, holds to the contrary.

"Debt" has been extended to cover moral obligations arising from contracts unenforceable at law (*Mayor v. Gill,* 31 Md. 375), whether recoverable at law or in equity, and without being limited to a fixed and determinable sum due from one person to another. *Snyder v. State,* (Wyo.) 40 Pac. 441; *Scott v. Neeves,* (Wis.) 45 N. W. 421, 423. It includes equitable, as well as legal, debts, and hence the claim of a surviving partner for a balance due him from his deceased partner. *Babcock v. Lillis,* 4 Bradf. Sur. (N. Y.) 218, 219; *Sellis'* case, 4 Abb. Prac. (N. Y.) 272, 273. In Ohio, it is held that an equitable obligation to pay is a debt. *Longworth v. Mitchell,* 26 O. St. 334; *Thompson v. Thompson,* 4 O. St. 333, 351. To the contrary is *People ex rel. Stephens v. Halsey,* 37 N. Y. 344.

### 4.

Coming to what is somewhat more concrete, we find it

has been held that the word as used in a statute authorizing an attachment for debt does not include a claim in tort. *Day v. Bennett*, 18 N. J. L. 287, 288; *Holcomb v. Town of Winchester*, (Conn.) 52 Am. Rep. 608, 609; *Finlay v. Bryson*, 84 Mo. 664, 668; *Sunday Mirror Co. v. Galvin*, 55 Mo. App. 412, 418, 419; *El Paso Nat. Bank v. Fuchs*, (Tex.) 34 S. W. 206, 207. And so of a statute against fraudulent conveyance to avoid the debt or duty of others. *Fox v. Hills*, 1 Conn. 294, 299. In *Dunlop v. Keith*, (Va.) 19 Am. Dec. 755, a claim for the official neglect of a county clerk was held not to be a debt within the meaning of the statute authorizing an attachment for debt. On the other hand, cases hold that a debt means a legal obligation or liability to pay a sum certain, and it makes no difference how the liability arises, whether it be by contract or imposed by law without contract. *Rhodes v. O'Farrell*, 2 Nev. 60. And that the means of coercing payment do not enter into the definition. *Dunsmoor v. Furstenfeldt*, (Cal.) 26 Pac. 520; *Warner v. Cammack*, 37 Iowa, at 642, 644. As to costs provisions in suits "for any debt or demand", suits are covered whether founded on contract or tort. *White v. Hunt*, 6 N. J. L. 415, 418. Where the term is equivalent to "liability", there may be included obligations arising under a contract or in consequence of a tort. *Detroit Post & Trib. Co. v. Reilly*, (Mich.) 9 N. W. 492; *Hill v. Bowman*, 35 Mich. 191; 8 Am. & Eng. Encyc. (2d Ed.) 986. *In re Radway*, 20 Fed. Cas. 154, 162.

### 5.

The bankruptcy act provides that "A discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as    .    .    .    were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity". 30 Stat. L. 550 (Supplement 1912 to Federal Statutes Annotated, Vol. 1, pp. 570, 578).

Construing this, it has been held that in such statutes

"debt" and "claim" are synonyms (*Stokes'* case, 10 R. I. 261, 263; *Howland v. Carson,* 28 O. St. 625, 628) ; that, hence, a liability for fraud was a debt, and it was immaterial whether a judgment asserted was founded on tort or on contract. And see *In re Comstock,* 6 Fed. Cas. 237; *In re Book,* 3 Fed. Cas. 867, 868; *In re Brouillard,* (R. I.) 40 Atl. 762. Further held that one entitled to recover for a tort was a creditor. *Munson v. Genesee Iron & Brass Works,* 56 N. Y. S. 139, 148 Debt embraces a cause of action for trover. *Sullivan v. Bridge,* 1 Mass. 511, 513.

On the contrary, it is held in *Esmond v. Bullard,* 16 Hun. (N. Y.) 65, which was not followed in the *Munson* case, 56 N. Y. S. 139, that, under the bankruptcy act and other statutes which expressly relate to the proving or payment of debt, a tort was not, strictly speaking, a debt. And *In re Baker,* 96 Fed. 954, 956, declares that the word "debt", as found in a bankruptcy act, is used in its legal and limited sense, and not in its popular and enlarged signification; that thus some demands, although in the form of judgments, are held not to be "debts", within the meaning of that term as used in the acts; and others, though within the letter, are held not to be within the spirit, of those laws; that thus, under the act of 1867, a judgment for a fine was held not to be a debt provable in bankruptcy, and that, under such rule, a judgment in a bastardy proceeding for the maintenance of a child is not a debt.

### 6.

Were this all, it might be held that, though the cases preponderate in favor of the position that a liability in tort is a debt, there is such substantial conflict as that appellee was not unreasonable in entertaining and acting on the belief that this article was not intended to and did not cover a liability arising from an embezzlement. But this is not all. *Smith v. Omans,* 17 Wis. 406, holds that, in a statute exempting a homestead, debt covers a judgment rendered in an action of

tort. So does *Dellinger v. Tweed,* 66 N. C. 206, 210; and *Gill v. Edwards,* 87 N. C. 76. A judgment founded in tort is a debt. *Mertz v. Berry,* (Mich.) 59 N. W. 445, 446. *Coats v. Arthur,* (S. D.) 58 N. W. 675, 676, holds that, in a statute requiring the affidavit in attachment to contain a statement of the "claim, specifying the amount of the claim and grounds", an averment that "debt was incurred for property obtained under false pretenses" is such claim. In *Melvin v. State,* (Cal.) 53 Pac. 416, it is decided that, under an act of Assembly which gives the State Board of Agriculture control of the State Agricultural Society, and authorizes it to provide for an annual fair, and provides that, in no event, should the state be liable for any debt made by said board, the term "debt" includes an unliquidated demand arising by implication of law only from an injury to a visitor to the fair caused by an act of nonfeasance of the officers of the society. While the word was used in a statute, that fact alone

4. BUILDING AND LOAN ASSOCIATIONS: articles of incorporation: stockholder held to knowledge.

does not give the term a meaning different than if used in a contract. The only difference is as to notice. A statute is notice to all; a contract, not necessarily so. But here, the party sought to be charged is a stockholder, and there is no difference as to notice. The by-laws are as much notice to him as would be a statute, and we think that, for all purposes involved in this controversy, including the creation of a lien on shares issued, articles of incorporation are as effective as statutes would be. See 2 Cook, Corp. (7th Ed.), Sec. 522; *State v. Central Iowa R. Co.,* 71 Iowa 410, 415; *Dempster v. Downs,* 126 Iowa 80, 82, and *Farmers' & Merchants' Bank v. Wasson,* 48 Iowa 336, 340.

We cannot agree that *Jennings v. Bank of California,* (Cal.) 21 Pac. 852, is any authority to the contrary, or, as is claimed, a holding that the mere acceptance of the certificate, without objection, will not constitute a contract. We find the decision in that case to be, so far as this case is concerned: first, that a corporation has power to prescribe in a certificate

of stock that such stock will not be transferred on its books until the payment of all indebtedness due the corporation by the person in whose name the stock stands on the books, though the terms on which stock may be transferred are prescribed by statute; second, that, when the stockholder accepts, without objection, a certificate containing such a condition, and thereafter borrows money from the corporation, he assents to the condition, and the bank has an equitable lien on the stock for the amount due; third, that, under a Code provision declaring that a transfer of stock by endorsement and delivery of the certificate is not valid except between the parties until the same is entered on the books, an assignee of the certificate takes subject to the equities of the corporation, and that, as the condition is sufficient to put him on inquiry, he is not a *bona fide* purchaser; and fourth, when such assignee gives the corporation no notice of the transfer, the lien extends to advances subsequently made by the corporation to the assignor.

In *Hotchkiss & Upson Co. v. Union Nat. Bank,* (C. C. A.) 68 Fed. 76, is left expressly undecided the question whether loss by embezzlement is a debt. In *National Bank of the Republic v. Rochester Tumbler Co.,* (Pa.) 33 Atl. 748, and *Commonwealth ex rel. Sproul v. Standard Plate Glass Co.,* (Pa.) 50 Atl. 1004, the Supreme Court of Pennsylvania holds that a liability so created is a debt, and the debt of a shareholder, in the sense that it is secured by a lien on the shares created by a statute which is, in substance, the same as the article at bar. It is, however, true that, while the *Sproul* case holds that the defalcation is a breach of the contract of the officer, it mentions that the demand became liquidated before the party affected by the lien demanded a transfer of the shares to him. Such difference as this fact may make is considered elsewhere in this opinion.

"A debt is in law an obligation to pay money, and the obligation may arise *ex contractu* or *ex delicto*. The obligation may be express *ex contractu,* or implied quasi *ex con-*

*tractu.* It may arise *ex delicto* on actual tort, or quasi *ex delicto* on what the law chooses to treat as a tort, and thus it is plain that a debt or obligation may be contracted as well through a tort committed as a bargain entered into.'' *In re Radway,* (U. S.) 20 Fed. Cas. 154, 162. And see *McElfresh v. Kirkendall,* 36 Iowa 224, 226.

In *Goodwyn v. State,* (Tex.) 64 S. W. 251, 252, it is held that embezzlement may be the breach of an implied contract; and in *Fagnan v. Knox,* 66 N. Y. 532 (citing that of *Boardman v. Gore,* 15 Mass. * 336 [319]; *Administrators of Dumond v. Carpenter,* 3 Johns. (N. Y.) 183; and *Causidere v. Beers,* 1 Abb. Ct. App. Dec. (N. Y.) 333), that ''An action for money had and received will lie for money obtained by fraud or embezzlement. In all such cases the law implies a promise to pay.''

We said in *Johnson v. Butler,* 2 Iowa 535, 545, that a judgment recovered for a tort is a debt, and will be the basis for attachment proceedings as much as if it was recovered upon a contract. *Warner v. Cammack,* 37 Iowa 642, is that the liability of a person who obtained money from another by means of false and fraudulent representations in the sale of a patent right is a debt, within the meaning of that word as used even in a remedial statute like the one creating a homestead exemption; and it was accordingly held that the homestead of the person selling the patent, acquired after such sale, but before judgment rendered in an action to recover damages on account of such fraudulent representations, was liable to such judgment. This case is squarely approved in *Stanhope v. Swafford,* 77 Iowa 594, at 596. In *Walker v. Walker,* 117 Iowa 609, at 611, the *Warner* case and the *Stanhope* case are treated as authority for the proposition that, if one receives money as agent and converts same to his own use, an indebtedness is thereby created. *McElfresh v. Kirkendall,* 36 Iowa 224, at 227, is a decision that, where the husband was at common law liable for torts of the wife committed after marriage, and a statute exempts him from liability for her

debts only, the husband still remains liable for such torts. In our opinion, this is not a decision that no liability for tort can be a debt, but that the legislature has declared that specified liabilities in tort shall not be held synonymous with debt.

On the issue now under consideration, appellee is charged with having knowledge of these express holdings, which include decisions of this court. It is not unreasonable, either,

5. BUILDING AND LOAN ASSOCIATIONS: articles of incorporation: lien on shares: "debt": construction.

to say that he was bound to take into consideration that the article was framed by the association, and, therefore, intended to be as plenary as possible in protecting its interests. He was a volunteer; and we think, in view of this notice of this law and of the intent of the association, he may not insist that his venture shall be aided by our adopting the construction he chose to give the article, nor complain because we so construe it as that, against a volunteer pledgee, the word "debt" covers a liability arising from an embezzlement by the pledgor, if it can be said that such liability was the liability of a shareholder,—a question discussed later,—no decision being made as to whether a tort, generally, committed by the shareholder against the corporation would be a debt in the meaning of this by-law.

II. Just how material is it in this controversy that, in *Com. ex rel. Sproul v. Standard Plate Glass Co.*, 50 Atl., at 1004, the Supreme Court of Pennsylvania pointed out that the claim for

6. LIENS: priorities: enforcement delayed: effect.

embezzlement had been liquidated before the one sought to be charged with a lien demanded a transfer, or how material to it is the general rule that unliquidated demands are not debts? This rule is bottomed on the thought that, so long as it cannot be known that there may be a recovery at all, or in what amount, the element of certainty required of a debt is wanting. But in this case, it is conceded that there was an embezzlement; and, therefore, there is no uncertainty on that point. If the general rule aforesaid be applicable, it must be because of an uncertainty as to the amount due on account of the

embezzlement. The same authorities that establish the general rule establish also that, where the amount due is not uncertain, or can be made certain by mere computation, the general rule does not apply. This is applied to the conversion of a package of money, which is held in *Jones v. Hunt,* (Tex.) 12 S. W. 832, not to be a claim for unliquidated damages, because the amount due for the conversion ''could be precisely ascertained by a mathematical calculation, and did not depend upon the evidence of witnesses''. It appears in this record that, at the time this collateral was pledged to the appellee, the pledgor was then indebted in more than $2,000 in excess of the value of the stock pledged. So far as this record goes, this much is as certain as it would be after fixed by judgment. The pledgor was liable in that sum at least; and upon a promise implied by the law arising from the fact that he had derived a pecuniary advantage from a wrong done by him (*Warner v. Cammack,* 37 Iowa 642, 644, which holds, also, that such obligation to pay is a debt ''regardless of the form of action in which that obligation is sought to be enforced''). In *Baum v. Tomkin,* (Pa.) 1 Atl. 535, it is said that the distinguishing feature of a debt is that it is for a sum certain, or that the sum may readily be reduced to a certainty, and that the action of debt lies for the recovery thereof, without regard to the manner in which the obligation is incurred or is evidenced. The liability and amount due at the time the pledge was effectuated were fixed by law, and a claim is liquidated when the amount due is ''fixed by law'', or is fixed ''by the obligation of law''. *Chicago, R. I. & P. R. Co. v. Mills,* (Colo.) 69 Pac., at 318, right col.; *Commercial Union Assurance Co. v. Meyer,* (Tex.) 29 S. W. 93, 97. The utmost scope of this rule is the statement in *Wentworth v. Whittemore,* 1 Mass., 471, 473, that there is no debt whenever it is uncertain whether anything will ever be demandable.

Again, there is a line of cases that an obligation is not a debt while it is not yet due and payable. *Lum v. Steamboat Buckeye,* 24 Miss. 565; *Trowbridge v. Sickler,* 42 Wis. 417,

419; *Slutts v. Chafee,* (Wis.) 4 N. W. 763; *In re Glenn Iron Works,* 20 Fed. 674, 680. To the contrary is *Yocum v. Allen,* (Ohio) 50 N. E. 909. Another line of cases holds that a claim for a tort will not become a debt until judgment is rendered for it. *Thayer v. Southwick,* 74 Mass. (8 Gray) 229; *Crouch v. Gridley,* 6 Hill (N. Y.) 250; *Hill v. Bowman,* 35 Mich. 191, 192. *Detroit Post Co. v. Reilly,* (Mich.) 9 N. W. 492; *Maysville Street Ry. Co. v. Marvin,* 59 Fed. 91, 92, citing *Zimmer v. Schleehauf,* 115 Mass. 52; *Kellogg v. Schuyler,* 2 Denio (N. Y.) 73, 74; *Dresser v. Johns,* 6 C. B. (N. S.) 429, 436; *Wilde v. Mahaney,* (Mass.) 67 N. E. 337, 339, citing *Thayer's* case, 74 Mass. 229; *Rhodes v. O'Farrell,* 2 Nev. 60.

In one of our own cases (*McElfresh v. Kirkendall,* 36 Iowa 224, at 227), we state this general rule, *arguendo,* and so declare that it is only after judgment has been obtained that certain liabilities in tort assume the character of a debt. As said, this is merely argument in a case wherein the real holding is that the legislature has, by statute, declared that certain liabilities in tort shall not be treated as a debt. In *Warner v. Cammack,* 37 Iowa 642, at 644, we limit the rule requiring judgment before turning a wrong into a debt to cases where the wrong done results in no pecuniary advantage to the wrongdoer and hold expressly that, before judgment, a wrongdoer may be treated as liable on an implied contract to repay, if the wrong done by him *is* of pecuniary advantage to him.

Suppose it the law that the liability for a wrong done will not become a debt until fixed by judgment. If this were a dispute between rival claimants of title to the stock, this, being the law, would be controlling. But how is it material that a liability for tort does not become a debt until judgment, where the dispute is over which of the parties has a prior lien to secure a debt, one of them claiming a lien for debts due and to be due? Prospective liability may be in contemplation in creating a mere security, and it certainly cannot

7. Liens: priorities: corporate stock: corporate lien for "debt": construction.

destroy that security to show that things must yet be done before the security can operate as an effective lien. Assume that, when these parties got into court, the demand of the association was still unliquidated, and that it could not ripen into a debt until judgment was obtained, how does that take away or cancel its contract for security? How does the situation differ in principle from cases wherein one holds a lien for a debt not yet due? That would postpone the enforcement of the contract lien; but, surely, such security agreement should not be. subordinated to a rival claimant for a lien merely because something more ·remained to be done. Postponing the effectuating of a lien because the obligation secured is not yet fully ripened surely cannot have the effect of making the lien junior to a rival lien. The appellee declared that he had a lien for $2,000 lent the shareholder; the association, that it had a lien older in point of time upon the same shares, for liability created by a tort. The law permits it to waive the tort. In the language of *Warner v. Cammack*, 37 Iowa 642, at 644, whenever a party has de-

8. ACTIONS: nature and form: waiving tort.

rived a pecuniary advantage from a wrong done by him, the person wronged can waive the tort and maintain an action on ' the contract, and in such case the obligation of the wrongdoer to pay is a debt. Clearly, the appellant could well respond, ''True, my demand is not yet enforceable, and, therefore, my contract lien cannot yet be effectuated, but I can and will turn my demand into a judgment, then it will be a debt; my lien will be security for the collection of that debt. It is older than your lien. You can make me wait in collecting until I obtain judgment, but you may not have it said that your lien is superior to mine, and that my security which covers the future shall be ineffectual when I do turn the obligation due me into a debt.''

The article relied on by appellant created a mere lien ''for any sum due it''; it palpably contemplates a lien for future as well as present indebtedness. Indeed, it may fairly be said to contemplate future debt, mainly. For if all intended

is a lien for debts due when the shares are issued, a sum certain could be endorsed upon the shares as due, and as being a lien upon the shares. Thus, the purpose of being secured for debts then due would be as completely effected as though a mortgage on the shares for a sum due were executed and duly recorded. If, then, all that appellant claims is a security for future debts, all the authorities which hold that a claim for tort or other unliquidated contingency or unasserted demands is not a debt, have here no application. A lien for future debt is not made nugatory because at a given time no debt exists, or because, when the lien is asserted, something needs yet to be done to create what is, in strictness, a debt. That on the day when such lien is created there is no debt, or that, later, steps must be taken to ripen a liability into a debt, cannot change that the lien is for debts to be created, and is to be security at that future time when a debt first comes into existence. It may happen that the lienholder may not, at some given time, be entitled to foreclose his lien, because no debt exists, but that fact will not defeat his claim that his lien be declared prior, with enforcement postponed until there shall be a debt.

In one word, as against a mere claim for a lien for such sums as may ultimately be found to be due, the authorities which hold that an unliquidated demand or an obligation not due or for an amount not yet made certain is not a debt, have no application. This makes it immaterial whether the association had or had not a debt, *ipso facto,* because of the fact of the embezzlement. In any view, if it had a lien for the consequence of this embezzlement prior in point of time to that of appellee, the court should have declared that said lien had priority, and, at the utmost, have refused present enforcement until the demand had been turned into a debt. That at the hearing this had not yet been done was not, of itself alone, a justification for declaring the lien of the association to be inferior to that of the appellant, and all that we say as to future debt is merely argument for our decision, which is

that a lien may not be defeated merely because something in the future is required to turn what the lien secures into a "debt".

III. Claims are made for Sec. 1626 of the Code of 1897 which are somewhat difficult to understand, and which, as we understand them, we cannot accede to. This statute provides, first, that the transfer of title to shares is not

9. CORPORATIONS: transfer of shares: transfers as collateral: notice: prior lien of corporation.

valid until regularly entered on the books of the company, but that where, as distinguished from a sale of a title, the stock is pledged as collateral, then the holder may notify the secretary of the corporation in writing "and from the time of such notice, and until written notice that said stock shall have ceased to be held as collateral security, said stock so transferred and noticed as aforesaid shall be considered in law as transferred on the books of the corporation . . . without any actual transfer on the books of such corporation of such stock." It is further provided that, when the holding for collateral ceases, it is the duty of the holder to inform the secretary of the corporation of that fact. Further, that the secretary shall, as to transfers of collateral, keep a record showing such notice of transfer as collateral, and notice of discharge as collateral, subject to public inspection. As we understand it, for this it is claimed that, as this notice operated as a transfer with reference to the holders of collateral, it is the equivalent of an actual transfer on the books—and this may be so. But we fail to see how that establishes that, upon receiving such notice at any time before a lien is asserted by the corporation, the lien is thereby extinguished. To put it in other words, here were shares of stock that showed on their face that the corporation claimed a lien thereon. Appellee made a loan and took those shares into his keeping as collateral. Now, it is claimed that, by notifying the bank of this taking, and thereby accomplishing a transfer for the purposes of the loan, the lender obtained priority as to what the shareholder owed the corporation prior to the time this loan was

made.   Appellant correctly says that this notice takes the place of the actual transfer on the books necessary to effectuate a transfer of title.   But it does no more than that.   Surely, while the actual transfer on the books would terminate the lien as to any liability of the former shareholder thereafter accruing, such actual transfer would not discharge a lien for what the transferer owed before the corporation consented to his changing title.   We think the statute is very clear, and that it will bear no such construction as appellee claims for it.

The case of *Des Moines Loan & Trust Co. v. Des Moines National Bank,* 97 Iowa 668, is not against this.   It is a decision that, where a proposing lender advises the corporation that he was going to make a loan on the shares, and is not informed that any lien is claimed, the mere fact that the formal notice required by Code Sec. 1626 is not given will not permit the corporation to defeat the loan made, with its lien,— in other words, that the corporation estopped itself to assert its lien.   It is held, further, that, where the corporation has not reserved any lien on stocks for the indebtedness due from a stockholder, it does not acquire priority over such pledgee of such stock by taking a subsequent assignment thereof, even though the first transfer by way of pledge is not entered on the transfer book; that in such case the second assignment to the corporation entitled it only to the surplus after satisfying the claim of the pledgee under the first assignment.   We do not see what application *Farmers' & Merchants' Bank v. Wood,* 143 Iowa 635, and *Tierney v. Ledden,* 143 Iowa 286, have on appellee's contention as to the effect of Sec. 1626.

IV.   The article in issue provides for a lien on the shares of each ''shareholder'', for any sum due the association from ''said shareholder''.   This is a clear provision that the lien shall attach to the property of a shareholder for what may be due from him.   It will be noticed that it is not said that it is to be something due because he is a shareholder.   The definition as to what indebtedness the

10.   CORPORATIONS: articles of incorporation: provision for lien on stock: construction: *ejusdem generis.*

lien shall attach for is that it shall be for something due on account of subscription to stock on the part of the shareholder, or for money loaned by the association to the shareholder. If this stood alone, it would be exclusive, and the lien would attach to no indebtedness except for subscription, or for money loaned. Then comes a general provision that the lien shall also attach "for any other indebtedness due", but, once more, due from the shareholder. This, of course, contemplates indebtedness other than subscription to stock or money loaned. Unless *ejusdem generis* applies, the indebtedness provided for, generally, is stated broadly enough to include anything whatever that is a debt, and, as has been said, therefore an indebtedness arising from a wrong done. Now, whether "any other indebtedness" is or is not limited to the class of debt specifically described, it remains true that, while this other indebtedness is one due from the shareholder, it again is not said that it must not only be due from but due because of the status of the shareholder. Following this, it is stated that "no stock shall be transferred unless all debts due the association are first paid". Here, unless *ejusdem generis* applies, the lien covers whatever is a debt due the association from the shareholder, and the question whether using the word "shareholder" limits indebtedness to what is due because he is a shareholder, is not in this clause, except under *ejusdem generis*, because, with reference to this particular clause, the word "shareholder" is not used. It is apparent that the controversy is whether the article, as written, limits the lien to indebtedness, no matter how created, which is due because of some contract made or liability incurred *as* shareholder, or whether the lien is for indebtedness, no matter how created, so long as it is the debt due the association from one who is a shareholder. In solving this question, we are not helped because liability arising from tort constitutes *a* debt. Establishing that certain things constitute a debt does not prove that it is such debt as has been secured by a given written instrument. It is competent for the parties to contract that

things which are confessedly a debt shall 'not be protected by a lien contracted for at the same time; and the vital question here is not whether what Boehmler did created a debt, but whether the parties to Art. 15 agreed that his debt should be secured by the lien provided for in that article, or, rather, whether or not the article fails to provide a lien for that debt. It is idle for counsel, on the one hand, to say that, if it had not been the intention to make the lien as broad as they claim, it would have been easy to make it plain that the lien should not be so broad, and as idle for the others to say that, if it had been the intention to make the lien broad enough to include the very debt at bar, it would have been easy to make that intention manifest. If either course had been taken, we would be relieved from interpreting this writing, and, in all probability, there would have been no suit to come before us. We may not be relieved from discharging the burden thus put upon us because something might readily have been done that would have made interpretation needless.

As we understand it, the only differentiation, which appellee attempts of the pronouncements of the Supreme Court of Pennsylvania on the exact question is that the writing interpreted there was a statute, and that the demand involved there had been liquidated before the controversy arose. We have said enough heretofore to indicate why we think these are distinctions which do not create a difference. Unfortunately, there is that about said decisions of the Supreme Court of Pennsylvania which, while it presents no differentiation between the Pennsylvania cases and this one, does greatly detract from the value of said decisions as a guide here. The court ruled that an embezzlement by an officer of the corporation was a debt, within a statute substantially worded as is the by-law at bar. We so hold here. But, as said before, proving that Boehmler was indebted to the association does not prove that his debt was within the language of the article. As the Supreme Court of Pennsylvania found that the embezzlement of the officer created a debt secured by

a lien on the shares, it must have concluded either that this constituted a wrong done as a shareholder or that it was immaterial whether it was so done, and sufficient under the statute that the wrong was done by an officer who was a shareholder. It must have held the last, because we should not assume that it decided that the embezzlement was the act of the shareholder as shareholder, unless we also assume that it overlooked that being a stockholder in a corporation cannot, of itself, create the fiduciary relationship essential to embezzlement. It is regrettable that the court was content to merely announce that the stockholder who, as officer, committed. an embezzlement, created a debt covered by a lien such as is found in the Pennsylvania statute, and in Art. XV; and that nothing is said as to how the conclusion was reached that such embezzlement by an officer who was a shareholder was a debt to which such lien was applicable. We have thus the conclusion of the Pennsylvania court, and such help as the mere fact that such conclusion was reached by it gives; but unless satisfied with merely stating our conclusion to be that of the Pennsylvania cases, these cases have not relieved us from the necessity of formulating for ourselves the reasons for our conclusion.

We may assume, for the sake of argument, that the words "or for any other indebtedness due from the shareholder", following a provision that there shall be a lien for what is due from the shareholder "either on account of the subscription to its stocks, or for money loaned by the association to said shareholder", are *ejusdem generis,* and the words limited to something which belongs to the enumerated class whose enumeration the broader clause follows. But then comes a distinct contingency which makes no reference to subscription, or borrowing, but which undertakes to deal with nothing but transfer, and to provide as to "all debts due" in case of transfer. *Ejusdem generis* certainly has no application to this. The phases of the agreement dealing with subscription and borrowing have been disposed of; they are not again

recurred to; a new field of contract is entered; the thing which appellee urges as controlling—using the word "shareholder"—is not done in connection with the "all debts due" which are now spoken of. Surely, the doctrine does not shut out agreements distinct from what is enumerated. Surely, this is such. Surely, the parties may agree that, so long as one party remains a stockholder, with unencumbered stock, his shares shall be security for nothing but unpaid stock subscriptions and loans, and that the relation may not be severed or the stock be made subject to the lien of another, except upon payment of any and all debts owing the corporation, additional to subscription and borrowing. Surely, if the stock is not to be liable in any event for anything but these two items of debt, there was no occasion to make a separate statement as to what debts must be paid in case of transfer. On that theory, it was already said. A statement that the only lien was for subscription and loans states what debt must be paid to obtain transfer. To such distinct agreement must apply the doctrine that, as to *ejusdem generis*, "it has never been supposed that the rule required the rejection of the general terms entirely. . . . On the contrary, it must yield to another salutary rule of construction, namely: that every part of a statute should, if possible, be upheld and given its appropriate force"—*Misch v. Russell*, (Ill.) 26 N. E. 528. In the case of *Bank v. Tumbler Co., supra* (33 Atl. at 748, 749), the statute construed, among other things, provided that the transfer shall be subject "to all the payments due or to become due thereon", and that no certificate "shall be transferred so long as the holder thereof is indebted to said company, unless the board of directors shall consent thereto". This is not essentially different from the provision here that "no stock shall be transferred unless all debts due the association are first paid". The Supreme Court of Pennsylvania holds that this applies the lien to a liability founded on embezzlement, because, otherwise, the power to refuse consent

to a transfer of the title would in fact not exist; that, on such reasoning, if there were no debts, the consent would not be needed; and that, if there was a debt, and yet no lien, consent to transfer would be of no value, and would always be dispensed with. As said, the court holds that this language is broad enough to give the lien which appellant claims.

In this connection, appellee presents that the effect of Code Sec. 1626 is to take this case out of the reasoning of the Pennsylvania case. It is true that this statute enables one who loans with the shares as collateral to effectuate sufficient transfer for his purposes, although the stock be not actually transferred on the books of the corporation as is necessary between buyer and seller, by giving notice to the corporation of the loan and the taking of collateral. But we think it clear, and believe we have demonstrated, that, while the notice under this statute operates as a transfer for the purpose of the loan, this does no more than to advise the corporation that its lien on the shares will, as to any indebtedness permitted or arising after the loan, be junior to the claim of which the corporation has been notified.

Whatever, then, may be said as to some parts of the article, we think it clear, and all we decide on this head is, that, in this contest for priority between the corporation and this transferee, the lien of the corporation, if confined to what was due it from the shareholder before the loan was made by the transferee, is superior to the lien of the latter.

We do not overlook that this impairs the availability of stocks as collateral security. We may not remedy this by refusing to effectuate whatever is the fair construction of the agreement made. The remedy lies with the parties, or in obtaining an assurance from the corporation that will work an estoppel, or in legislative action.

## 2.

We do not overlook the argument that, since the secretary was bonded, it must have been the intent of the corpora-

tion to rely for reimbursement, in case of defalcation, upon bonds, and, therefore, not its intention to create a lien upon

11. CORPORATIONS: lien of corporation: bonding officers against misconduct: estoppel.

the shares for the purpose of reimbursing itself for an embezzlement. The fallacy of this argument lies in assuming that the bonds were relied upon as the sole security for defalcation. The chances are that, when the by-law in question was framed and adopted, and at the various times when Boehmler gave bonds, the corporation had no thought of a defalcation; that it adopted the article and took bonds as a matter of general business routine; that it thought of neither as a specific safeguard and, consequently, had no thought of relying upon either as an exclusive safeguard against embezzlement. One who has taken such bond is not estopped from asserting a lien. Both the bonds and the lien may, and may be needed to, help collect the same debt. In the absence of any evidence that the bonds were relied on exclusively, we are not inclined to hold that because bonds were taken; therefore the lien of the article does not cover damages caused by official misconduct.

We are the better satisfied with the conclusion that we have reached because, as it seems to us, any other would be more of a play upon words than an analytical decision. In

12. CORPORATIONS: lien of corporation: articles: construction.

essence, the situation does not differ from what it would have been, had there been a contract reciting that one John Jones was a shareholder, and that, if he became indebted to the corporation, it should have a lien upon his shares. We think that the language employed is, in effect, a matter of identification; that the spirit of the agreement is to give a lien upon the shares of any who are shareholders; that the word "shareholder" defines the class who agree to the lien; and that, upon a showing that the debtor to the corporation is of that class, it becomes immaterial whether the debt rests upon one act of the one within the class, or upon some other act of the same person. If Boehmler is of the class as to which it is

agreed that debts from them shall be covered by a lien, the question is whether he was in debt, and not in what capacity he got into debt.

## DIVISION II.

It is contended for the decree below that the association is estopped to assert its lien because: (1) Before appellee made the loan, the association delivered to him a pass book purporting to contain a copy of the articles of incorporation and by-laws, and that what was copied in the pass book did not include the article now relied upon by the appellant, and that this amounts to saying to him that no lien was reserved, and he relied on this; (2) a statement in the by-laws copied in the pass book, that all stock not in arrears was transferable, was equivalent to saying to appellee that there was no by-law which created a lien on stock transferred while there was an arrearage; (3) appellee was sent statements which asserted that the business and books had been audited, which things influenced him to make the loan, and that he would not have made it without; (4) appellee was informed by statements in this pass book that the officers of the association were bonded: that this was misleading, and amounted to saying that appellee could see by the by-laws that, if he made a loan on stock, he was insured against possible loss from possible dishonesty of any of the officers because these were required to give fidelity bonds with adequate security for the faithful performance of their trusts.

13. CORPORATIONS: lien of corporation: estoppel.

The appellee was himself a stockholder and, no matter what the pass book did or did not say as to by-laws, was bound to know what the by-laws in truth were—to take note of any amendments; and he had the power, by going to the record, to find out at any time what any valid by-law was, because, unless of record, it would not be valid. To put it another way, he was charged with every provision of the arti-

cles and amendments thereto by the record thereof in the office of the proper recorder of deeds. See *Simeral v. Dubuque Mutual Fire Ins. Co.*, 18 Iowa 319, 322; *Fitzgerald v. Metropolitan Accident Assn.*, 106 Iowa 457, 459; *Farmers' Mut. H. Ins. Assn. v. Slattery*, 115 Iowa 410, 413. Moreover, the certificate of stock assigned to appellee as collateral itself contained the provisions of the article in question. The delivery to plaintiff of the pass book, made before he loaned, could not, by possibility, be construed into a statement on the part of the association that Boehmler was not then indebted to the association, or would not become so after the delivery of the pass book.

As to the audit, nothing said by the statements and certificates sent the appellee stated in any way that Boehmler was or was not indebted to the association. At the utmost, there was given the opinion of the examiner, based

14. ESTOPPEL: equitable estoppel: elements: certainty.

upon an examination of the books and accounts of the secretary and treasurer and on comparing balances, that he found nothing in the books and accounts to the contrary of the faithful performance of duty on part of the officers. This is, at most, a mere opinion.

Be that as it may, the auditor who made these certificates, and whosoever may have mailed them to the appellee or given him the pass book, were his own agents as a stockholder. There is no room for the theory of misleading

15. PRINCIPAL AND AGENT: liability of principal: joint agency.

and the like, which appellee advances. He cannot recover of his fellow stockholders for a wrong done him by one who was his agent as well as theirs. Enough has been said as to the taking of bonds.

There is, at most, no more than the possibility of drawing an inference from the reports of the examiner that Boehmler was not indebted to the association. From the earliest days of the law, however, an estoppel *in pais* may not be thus predicated, and the statement of Lord Coke, that "every estoppel because it concludeth a man to allege the truth must be cer-

tain to every extent, and not to be taken by argument or infer-ence", is still the law.

In our opinion, the decree must be—*Reversed.*

DEEMER, C. J., LADD, WEAVER, GAYNOR and PRESTON, JJ., concur.

EVANS, J., dissents.