JULIA KIFFNER, Appellant, v. CHARLES H. KIFFNER et al., Appellees.

**TRUSTS: Spendthrift Trusts—Not Subject to Debts of Cestui Que Trust.** Where a testator created a trust fund in the hands of a third person, with full and *unlimited* power of control in the trustee, who was authorized to pay to testator's son, from time to time, such sums as, in his discretion and judgment, he deemed wise and prudent and just for the son's welfare, *held* that the testator had the right to confer upon the trustee such full power over the fund as he would have had, if living, and that

such a fund *was not subject to the debts of the son until it passed into his hands.*

SALINGER, J., dissents.

*Appeal from Bremer District Court.*—M. F. EDWARDS, Judge.

APRIL 11, 1919.

THIS is, in effect, a creditor's suit, wherein the creditor, as plaintiff, seeks to subject to her judgment a testamentary trust fund, on the theory that the judgment debtor, as the beneficiary of the trust, is the equitable owner of the fund. There was a decree dismissing the petition, and the plaintiff has appealed.—*Affirmed.*

*T. A. Kingland,* for appellant.

*Sager & Sweet,* for appellees.

EVANS, J.—The judgment debtor is the defendant Charles H. Kiffner. By the will of his father, he was a qualified legatee, to the amount of $10,000, to which a condition was attached that the sum should be held in trust by Frank A. Kiffner, as trustee, to whom was given the full and unlimited power of control over such fund "as, in his discretion and judgment, may be deemed wise and prudent, without any restriction or restrictions whatsoever." The trustee was specifically authorized to pay to Charles Kiffner, from time to time, such sum "as, in his judgment and discretion, may be deemed wise, prudent, and just for the welfare and well-being of my said son Charles H. Kiffner."

It will be seen from the foregoing that the case involves a testamentary trust created by the testator for the purpose of the support of an improvident son. In its facts, the case does not differ materially from those involved in *Meek v. Briggs,* 87 Iowa 610. The decree of the district court was in harmony with our holding in the cited case. This case

has been followed by us a number of times in our more recent holdings. *Merchants Nat. Bank v. Crist,* 140 Iowa 308; *Robertson v. Schard,* 142 Iowa 500; *Hunter v. Citizens Sav. & Tr. Co.,* 157 Iowa 168; *Olsen v. Youngerman,* 136 Iowa 404. The reasons underlying the law as pronounced in the *Meek* case are fully discussed in the above cases. No useful purpose can be subserved by repeating the discussion here. Sufficient to say, in general terms, that the testator owed no duty, legal or moral, to provide for the debts of his son; that he had a right to dispose of his own estate as he would; that he had a right to create a trust fund and place the same in the hands of a third party as trustee, and to confer upon such trustee such full power over the fund as the testator himself would have had if living; and that he had a right to adopt this course for the very purpose of enabling the trustee to support the improvident son, and yet prevent his creditors from appropriating the benefaction. The creditors are not thereby wronged. It is true, of course, that, when the fund has once passed into the hands of the beneficiary, it becomes his unqualified property, and is subject to the same processes in his hands as any other property. But as long as it is withheld from the control of the debtor, it is beyond the reach of the creditor, also. *Nichols v. Eaton,* 91 U. S. 716.

The plaintiff first sought to reach the fund by garnishment of the trustee. Thereupon, this suit was brought, in aid of the garnishment. Later, the garnishment was dismissed, and equitable relief alone is now asked. If the grounds upon which plaintiff bases her equity suit are good, we see no reason why she might not have maintained a garnishment on the same grounds. As a ground for equitable relief, she avers that her debtor and the trustee are in collusion against her, to prevent the collection of her judgment. This allegation is a mere legal conclusion, and an erroneous

one. The trustee owes no duty to the creditor. On the contrary, his trusteeship is in hostility to the creditor. He was not bound, therefore, to exercise his discretion in favor of the creditor. Indeed, the clear implication of the condition of the trust was that he should not do so. The decree of the district court being in harmony with our previous cases, above cited, it is, accordingly,—*Affirmed.*

LADD, C. J., GAYNOR, PRESTON, and STEVENS, JJ., concur.

SALINGER, J. (dissenting). Somewhere, this appellant ought to have a day in court on the suit she tenders. Up to this time, all consideration, including that given by the majority, is devoted to denying claims which appellant has never made. The father of her husband made a will, bequeathing a sum of money to the son absolutely, so far as title thereto is concerned. The only limitation is that it shall be in the discretion of a trustee appointed when the fund, in whole or in part, shall be paid over, and that the trustee may pay it over whenever it is his judgment that such payment is for the good of the *cestui.* In other words, the *cestui* has title; the ancestor contemplates that he may be given possession,—does not forbid it; but the trustee is saved harmless, if he pay over, or if he do not pay over. It cannot be denied that, if the *cestui* gave someone an order upon the trustee, and the latter saw fit to honor it, that he has the right to do so. It cannot be denied that, if the trustee paid over all the fund to the *cestui,* and the latter deposited it in bank, the latter would have perfect title to the deposit, and execution issued on the alimony decree which his wife has, could effectively be levied upon the deposit. The appellant is not asking that the trustee be compelled to exercise his discretion, or she allowed to seize any part of the fund while the trustee has it. She applies to a court of equity to safeguard such rights as she will have when, if ever, the trustee shall elect to pay. She is met by

the citation of cases like *Meek v. Briggs,* 87 Iowa 610, where
the testator created a fund for an improvident, under which
the title could never pass to the son, and under which no
part of the fund could be paid over, even by the concurrent
act of the trustee and the *cestui.* I am not denying that one
who gives may attach such conditions as that creditors can,
under no circumstance, seize what has been given. My
position is that no such trust is created in this case. The
trustee has power at any time to surrender to the *cestui.*
When he does so, nothing written by the testator stands in
the way of seizure by creditors. The question is not what
the rights of creditors are in a fund that they can never
touch, but whether, where it is possible that the act of a
trustee may lawfully subject a fund to seizure by creditors.
equity has any power to see to it that, when the surrender is
made, the creditor shall be assured of satisfaction. So far
as real property is concerned, Section 3801 of the Code cre-
ates such a safeguard. It provides that a judgment shall be
a lien upon real estate which the debtor may subsequently
acquire. It does not seem a strained use of the powers of
the chancery court to provide a similar safeguard as to per-
sonal property. The reasons which dictate this statute give
full support to such an exercise of equitable jurisdiction. In
my opinion, *Jewell v. Nuhn,* 173 Iowa 112, is, in principle,
quite applicable. It holds that equity may so deal with
property as that one whose lien is not yet effective, because
steps must yet be taken to make it effective, shall have pri-
ority saved until those steps are taken. We said, in that
case:

"True, my demand is not yet enforcible, and, therefore,
my contract lien cannot yet be effectuated, but I can and
will turn my demand into a judgment; then it will be a debt;
my lien will be security for the collection of that debt.
* * * You can make me wait in collecting until I obtain
judgment, but you may not have it said that your lien is

superior to mine, and that my security which covers the future shall be ineffectual when I do turn the obligations due me into a debt."

What the plaintiff asks may not prove very helpful to her. Eliminating the question of what may be done if the trustee captiously or dishonestly refused to pay over, she may never get anything because the trustee elects not to pay over. But that the relief prayed may not be greatly helpful to the applicant is not an objection that lies in the mouth of either trustee or *cestui*. Equity has not usually been deemed an ally of dishonest purpose. To grant the relief prayed cannot possibly interfere with an honest act. So long as the trustee honestly refrains from paying over, the plaintiff seeks nothing, and can have nothing. What she does ask is effective only should the trustee exercise his power to pay over, and make the payment in such manner as to hinder and delay the satisfying of plaintiff's judgment out of what has been paid over. What the majority affirms is a refusal to see to it that, if the trustee does turn over the fund to the *cestui*, the right to enforce the judgment of the plaintiff shall be assured. In my opinion, there should be a reversal, and a decree ordering that, while the trustee need not pay over until, in his discretion, such payment is for the good of the *cestui*, that, at the time of such payment, a lien shall attach to the fund surrendered, to the extent of the amount of plaintiff's judgment.